## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ANGEL D.,**[1]

      **Plaintiff,**

                                **Case No. 2:22-cv-1256**

    **v.**                           **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Angel D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On October 17, 2019, Plaintiff filed his application for benefits, alleging that he has been disabled since April 1, 2009. R. 76, 85, 207–08. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 86–90, 94–96. Plaintiff sought a *de novo* hearing before an administrative

law judge ("ALJ"). R. 97–98. ALJ Kenneth Ayers held a hearing on June 10, 2021, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 43–68. In a

decision dated June 29, 2021, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act at any time from April 1, 2009, Plaintiff's alleged disability

onset date, through December 31, 2010, the date on which Plaintiff was last insured for

Disability Insurance Benefits. R. 15–26. That decision became final when the Appeals Council

declined review on January 5, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42

U.S.C. § 405(g). ECF No. 1. On July 6, 2022, Plaintiff consented to disposition of the matter by

a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal

Rules of Civil Procedure. ECF No. 5.[3] On that same day, the case was reassigned to the

undersigned. ECF No. 6. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. ----, ----,139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> [U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.  Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUE

Plaintiff was 54 years old on April 1, 2009, *i.e.*, his alleged disability onset date. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and December 31, 2010, the date on which he was last insured for benefits. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: right shoulder internal derangement status-post arthroscopy; left knee internal derangement status-post arthroscopy; and spine disorder. *Id.* The ALJ also found that constipation and abdominal pain were nonsevere, as were "asthma issues" and "possible chronic obstructive pulmonary disease," which the ALJ found not medically determinable.  R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a construction worker and production line assembler. R. 23.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs−*i.e.*, approximately 55,000  jobs as a garment sorter, approximately 120,000 jobs as a laundry folder, and approximately 170,000 jobs as an office cleaner−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning

7

of the Social Security Act from April 1, 2009, his alleged disability onset date, through

December 31, 2010, the date on which he was last insured. R. 25–26.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision

of the Commissioner be reversed and remanded with directions for the granting of benefits or,

alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 10. The Commissioner

takes the position that his decision should be affirmed in its entirety because the ALJ's decision

correctly applied the governing legal standards, reflected consideration of the entire record, and

was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to*

*Local Civil Rule 9.1*, ECF No. 13.

## IV.    DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's determination at step five of the sequential

evaluation process, arguing that the ALJ erred in concluding that Plaintiff is not illiterate and that

such error was not harmless because a finding of illiteracy would have directed a finding of

disability under Grid Rule 202.09. *Plaintiff's Moving Brief*, ECF No. 10, pp. 16–22. For the

reasons that follow, this Court agrees.

Unlike at the first four steps of the sequential evaluation process, it is the Commissioner

who bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir.

2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v.*

*Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). At this step, the ALJ must decide whether the

claimant, considering the claimant's RFC, age, education, and work experience, can perform

other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

"[T]o improve both the uniformity and efficiency of this determination," the Social Security

Administration promulgated the Medical Vocational guidelines, also known as the "Grids," "that

establish the types and number of jobs that exist in the national economy for claimants with exertional impairments." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citations omitted); *see also Martin v. Barnhart*, 240 F. App'x 941, 944 (3d Cir. 2007) (stating that the Grids "are 'rules' which are used to direct conclusions of 'disabled' or 'not disabled' based on a claimant's vocational factors (age, education, and work experience) and exertional RFC (sedentary, light, medium, heavy or very heavy)") (citations omitted). "[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations," the Grids "are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (explaining further that, even if a finding of disabled is not possible based on the Grids, the Grids nevertheless "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations"). In other words, "[w]hile it is true that the Commissioner may not rely exclusively on the Grids to find a claimant not disabled when the claimant has non-exertional limitations, the inverse is not true. Where the Grids would direct a finding of disability, the ALJ must find the claimant disabled." *Hann v. Colvin*, No. 3:12-CV-02222, 2014 WL 4802902, at *13 (M.D. Pa. Sept. 26, 2014) (citations omitted).

As it relates to the issue presented in this case, Grid Rule 202.09 directs a finding of disability when a claimant with an RFC for light exertional work (1) is closely approaching advanced age; (2) is illiterate; and (3) whose previous work experience is unskilled (or there is no past work). 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09 (eff. 4/27/20); *see also* 20 C.F.R. § 404.1563(d) (defining a person "closely approaching advanced age" as ages 50 to 54 years old). Grid Rule 202.10 mandates a finding of not disabled when a claimant with an RFC for light

exertional work (1) is closely approaching advanced age; (2) has a limited or marginal education but is not illiterate; and (3) whose previous work experience is unskilled (or there is no past work). 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.10. The Social Security regulations identify the following categories of educational level: (1) illiteracy; (2) marginal education; (3) limited education; and (4) high school education and above. 20 C.F.R. § 404.1564(b). This regulation specifically defines, *inter alia*, "illiteracy" and "limited education"[4] and explains, further, that the numerical grade level that a claimant has completed may or may not represent a claimant's real educational abilities, as follows:

> (b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. *Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.* In evaluating your educational level, we use the following categories:

> > (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if *the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name*. Generally, an illiterate person has had little or no formal schooling. . . .

> > \*\*\*

> > (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to *allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education*. . . .

---

[4] The Court focuses on these two education categories because, as discussed in greater detail below, the ALJ found that Plaintiff had a "limited education", R. 23–24, and the parties disagree on whether Plaintiff is illiterate.

*Id.* at § 404.1564(b)(1), (3) (emphasis added); *see also* SSR 20-01p, 2020 WL 1083309, at *13693–94 (eff. Mar. 9, 2020) ("We consider an individual illiterate if he or she cannot read or write a simple message, such as instructions or inventory lists, *even though the individual can sign his or her name*. We will assign an individual to the illiteracy category *only if the individual is unable to read or write a simple message in any language*.") (emphasis added) (footnote omitted).

SSR 20-01p also advises that, "[i]n all cases, we determine facts on an individual basis. Therefore, to assign an individual to an education category lower or higher than his or her highest level of formal education, there must be specific evidence supporting the finding in the determination or decision." SSR 20-01p, 2020 WL 1083309, at *13693–94. This ruling further clarifies that, "whether an individual attained his or her education in another country or whether the individual lacks English language proficiency" is not a consideration when determining the appropriate education category. *Id*. at 13694 (explaining further that "[n]either the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or her formal education level"). SSR 20-01p also instructs that the ability to read and write a simple message is a reliable indicator of a person's educational level, but that relevant evidence may establish illiteracy even if the individual completed the fourth grade, *i.e*., the grade during which most individuals learn to read and write a simple message regardless of whether their schooling occurred in the United States or in another country:

B. Formal Education and the Ability To Read and Write a Simple Message

Generally, an individual's educational level is a reliable indicator of the individual's ability to read and write a simple message. A strong correlation exists between formal education and literacy, which under our rules means an ability to read and

11

write a simple message. Most individuals learn to read and write at least a simple message by the time they complete fourth grade, regardless of whether the schooling occurred in the United States or in another country. We will therefore use an individual's formal education level as the starting point to determine whether the individual is illiterate.

If evidence suggests an individual may be illiterate, we will determine whether the illiteracy category is appropriate as follows:

i. Individuals Who Completed at Least a Fourth Grade Education

Most individuals who have completed at least fourth grade can read and write a simple message. We will generally find that an individual who completed fourth grade or more is able to read and write a simple message and is therefore not illiterate.

We may still find, however, that an individual with at least a fourth grade education is illiterate if the individual provides evidence showing that despite having completed fourth grade or more, he or she cannot, in fact, read or write a simple message in any language. Examples of relevant evidence may include whether an individual:

• Has received long-term special education related to difficulty learning to read or write at a basic level;
• lacks work history due to an inability to read or write;
• has valid intelligence test results demonstrating an inability to read or write a simple message;
• has valid reading and writing test results demonstrating an inability to read or write a simple message; and
• has any other evidence demonstrating an inability to read or write a simple message.

We will assign an individual who completed fourth grade education or more to the illiteracy category only if the evidence supports the finding that despite having completed fourth grade education or more, the individual is unable to read or write a simple message in any language. We will not rely on test results alone to determine that illiteracy is the appropriate education category for an individual.

*Id*. (footnote omitted). Finally, the Commissioner "bears the burden of establishing literacy."

*Frontanez-Rubiani v. Barnhart*, No. CIV.A. 03-1514, 2004 WL 2399821, at *5 (E.D. Pa. Sept.

30, 2004) (citations omitted).

In the present case, at the administrative hearing where Plaintiff used a Spanish interpreter, Plaintiff's counsel questioned Plaintiff regarding his education and ability to read and write, as follows:

> Q All right, sir, how old are you right now?
> A Sixty-five in August, I'll be 65.
> Q Okay, where were you born sir?
> A Puerto Rico.
> Q *How far did you go to school in Puerto Rico, sir, the highest grade?*
> A *Fourth or fifth grade. I didn't finish the fifth grade.*
> Q Okay, are you able to read and write in Spanish?
> A No, I don't read and write Spanish very well.
> Q *Well, when you say very well, what can, what can you read and what can you write in Spanish?*
> A *For example, okay, I can sign my name in Spanish. Let's say some things I can read a little bit, letter by letter. I don't really know how to read.*
> Q Okay, how is your English?
> A No, I don't know English. I don't understand English too much.
> Q When you say too much, can you speak any English?
> A I will say some basic words, I can understand, but it, I -- I cannot say that I really understand English.
> Q *Okay, so, can you read and write in English?*
> A *No, I don't, I don't know how to read in English.*

R. 50–51 (emphasis added).

> Q Are you right-handed or left-handed?
> A Yeah, I'm right-handed, but right now using more the left hand. *I don't write.*
> INT: He typically uses examples for translation purposes, because there's a different in, in Spanish. *He said I don't write but when I sign, I use my right hand.*

R. 54 (emphasis added). The ALJ later asked the vocational expert to assume a hypothetical individual "of the same age, *education*, and work experience at the light level" with the additional limitations ultimately found in the RFC by the ALJ and whether there is any work available to such an individual. R. 59–60 (emphasis added). The vocational expert responded that the following light exertional jobs would be available to that individual: garment sorter (unskilled, SVP 2), laundry folder (unskilled, SVP 2), and office cleaner (unskilled, SVP 2). R. 60.

13

In his written decision, as previously noted, the ALJ found at step four of the sequential

evaluation that Plaintiff had the RFC for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through
> the date last insured, the claimant had the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry and
> can push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently
> with standing and walking six hours in an eight-hour workday and sitting six hours
> in an eight-hour workday. The claimant can occasionally reach overhead on the
> left, and occasionally reach overhead on the right. For all other reaching he can
> reach frequently to the right. The claimant can climb ramps and stairs occasionally,
> never climb ladders, ropes, or scaffolds, stoop occasionally, kneel occasionally,
> crouch occasionally, crawl occasionally. The claimant can never work at
> unprotected heights and never work around hazardous moving mechanical parts.

R. 19. The ALJ went on to determine at step five that Plaintiff had a "limited education" and was

not illiterate, explaining as follows:

> **8. The claimant has a limited education. The claimant used an interpreter at
> the hearing, but is not deemed illiterate in any language (20 CFR 404.1564).**
>
> *There is some **ambiguity in the record** regarding this factor.* As to representative's
> arguments on illiteracy: The undersigned does not believe the record supports. In
> 1E for example, the Field Office representative had a direct conversation with the
> claimant and no interpreter was used. Exhibit 2E indicates the claimant cannot
> speak and understand English, that he prefers Spanish. It also indicates he cannot
> read and understand English and that he cannot write more than his name in
> English. *He alleges completed 8th grade in 1970, not in special education.* [Exhibit
> 2E/3, R. 230.] There is no indication that interview conducted in 2E was in Spanish.
> There is also no indication that information on Exhibit 3E was provided through a
> Spanish-language interpreter either. Exhibit's 4E information was not based on
> claimant contact. Exhibit 5E does not indicates that there was a conversation in
> Spanish with claimant. and Exhibit 6E, does not indicate an interpreter was used.
> Also, in Exhibits 7E-10E, th[ere] is no indication that these calls were in Spanish,
> but there was no contact with claimant. Also looking at the medical records
> themselves, there is no indication for example in the most recent records from Dr.
> Garg that the Dr. speaks Spanish or that the visits were conducted with the
> assistance of an interpreter (see Exhibit 13F). The same goes for treatment records
> from Dr Reddy at Exhibit 11F. There is also … no indication that his visit for stress
> test was conducted in Spanish (Exhibit 11F). There is also no indication in the
> hospital records at Exhibit 10F, where use of interpreters is common, that any
> Spanish interpreter was used, and the discharge instructions are in English.
> Continuing, Exhibit 9F indicates that claimant preferred reading language
> (indicating the assumption that he can read) is Spanish and his preferred language

for written and oral communication is English. At page 32 of the same Exhibit, it was noted that his preferred language is Spanish, and language listed as barrier to learning. On page 37, it was noted his preferred language for oral communication is English and that no interpreter service was needed, which verbalizes understanding. The undersigned did not see anything in 9F either that would indicate Spanish interpreter was used. Exhibit 8F also indicates no [sic] there were no barriers, and that the claimant was able to communicate freely with caregiver. These conversations were in Spanish. In the rest of the records, there is little to no evidence of having to use Spanish interpreter to communicate and there is no indication anywhere in the record that claimant is illiterate (see Exhibit 3F, indicating language is Spanish but no indication of need for interpreter. *The undersigned also notes the medical evidence contains various discharge or surgical notices that in English and/or <u>signed by claimant</u>* (see Exhibits 1F and 3F). Overall, the undesigned concludes that there is insufficient evidence of record that claimant cannot communicate in English. *Also, the claimant <u>can **apparently** read</u> and* communicate <u>*in Spanish*</u>. *There also was no explanation for claimant's testimony of a 4th-5th grade education versus his earlier statements to the Field Office representative that he finished 8th grade. There is nothing in the records to indicate that the claimant is illiterate; <u>he has signed his name multiple times on various documents in English</u>, in the record.*

R. 23–24 (emphasis added). After noting that transferability of job skills was not an issue because Plaintiff's past relevant jobs as a construction worker and a production line assembler were unskilled, R. 23–24, the ALJ found that other work existed in significant numbers that Plaintiff could perform, explaining as follows:

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed

15

by Medical-Vocational Rule 202.10. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:

| Job Title | DOT Number | Exertional Level | Skill Level | Approximate Number of Jobs Nationally |
|---|---|---|---|---|
| Garment sorter | 222.687-014 | Light | SVP 2 | 55,000 |
| Laundry folder | 369.687-018 | Light | SVP 2 | 120,000 |
| Office cleaner | 323.687-014 | Light | SVP 2 | 170,000 |

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Where the testimony is inconsistent with the DOT (ie overhead reaching versus reaching generally) the vocational expert's testimony is based on his own professional experience, as well as his experience in the field for a number of years performing job analyses and job placements. Based on consideration of the entire record, including the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. While the claimant might possibly be assessed as having a marginal education level rather than limited, there is no evidence of record to support his claim that he is completely illiterate. *As to 202.10, the grid rule does not make a distinction between marginal versus limited educational profiles as both would result in a "not disabled" finding. Since I find the claimant to be literate, Grid rule 202.09 does not apply. Therefore, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.*

R. 24–25 (emphasis added).

Plaintiff contends, *inter alia*, that the ALJ erred in concluding that Plaintiff is not illiterate when he improperly relied on evidence that Plaintiff signed his name "in English" on various forms. *Plaintiff's Moving Brief*, ECF No. 10, pp. 18–19 (citations omitted). In support, Plaintiff points out that SSR 20-1p does not define literacy by reference to an ability to sign

16

one's name. *Id*. Plaintiff also argues that, to the extent that the ALJ found contradictions in the record or found that Plaintiff's educational record was "ambiguous", the ALJ failed to clarify those issues at the administrative hearing and instead improperly relied on his own speculation when he found in his written decision that Plaintiff was not illiterate. *Id*. at 18–22. Furthermore, Plaintiff contends that the ALJ's errors in this regard are not harmless because Grid Rule 202.09 directs a finding of disability for a claimant of Plaintiff's age on the date on which he was last insured for benefits, who had a history of unskilled work, and who was determined to have an RFC for light exertion. *Id*. (arguing further that the hypothetical question to the vocational expert was flawed because it did not include a limitation of illiteracy).

For his part, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's education places him in the "limited education" category and not in the "illiteracy" category. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, p. 15. The Commissioner specifically contends that "Plaintiff's self-reports and the medical record" support this finding, pointing out that Plaintiff's hearing testimony that he did not complete the fifth grade conflicts with his statement in his application that he remained in school until the eighth grade (and did not require special education classes). *Id*. (citing R. 18, 51). The Commissioner further argues, "The field office employee who handled Plaintiff's application, did not observe Plaintiff to have any degree of limitation in understanding, coherency, concentrating, talking, answering, or writing (Tr. 226)" and that Plaintiff communicated freely with his providers. *Id*. (citations omitted). The Commissioner therefore argues that "Plaintiff's one-time statement that he did not complete the fifth grade does not undermine the supporting substantial evidence, including Plaintiff's initial report of completing the eighth grade, notations of being able to

communicate freely, and no other evidence of illiteracy, that he had a limited education and thus, Grid Rule 202.09 did not apply." *Id.* at 16. The Commissioner's arguments are not well taken.

The ALJ began his literacy analysis by admitting that "[t]here is some ambiguity in the record" regarding Plaintiff's educational category. R. 23. Setting aside the ALJ's findings regarding Plaintiff's ability to communicate in English and not needing an interpreter at times—which the Commissioner concedes is not a useful indicator of educational attainment, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 13–14—there is evidence, as the ALJ noted, that Plaintiff "cannot write more than his name in English" and that Plaintiff testified that he had attained only a fourth/fifth grade educational level. R. 23–24. However, the ALJ concluded that Plaintiff was not illiterate because he "can *apparently read* and communicate in Spanish" and that there "was no explanation" for conflicting hearing testimony that Plaintiff had a

> 4th-5th grade education versus his earlier statements to the Field Office representative that he finished 8th grade. There is nothing in the records to indicate that the claimant is illiterate; he has *signed his name multiple times* on various documents in English, in the record.

R. 24 (noting further that "Exhibit 9F indicates that claimant's preferred reading language (indicating the *assumption* that he can read) is Spanish and his preferred language for written and oral communication is English" and that "the medical evidence contains various discharge or surgical notices that [are] in English and/or signed by claimant (see Exhibits 1F and 3F)") (emphasis added). However, as previously discussed, the ALJ's reliance on Plaintiff's ability to sign his name in any language is unavailing because a person will be deemed illiterate if that person cannot read or write a simple message such as instructions or inventory lists "*even though that person can sign his or her name.*" 20 C.F.R. § 404.1564(b)(1) (emphasis added); SSR 20-01p, 2020 WL 1083309, at *13693 (same).

18

Similarly unavailing is the ALJ's mechanical reliance on the numerical grade level—the eighth grade—that the ALJ presumed that Plaintiff had completed. As explained above, the numerical grade level that Plaintiff completed is not controlling where there is "other evidence" that "contradict[s] it[.]" *Id*. at § 404.1564(b) ("Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities."); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 824 (E.D. Pa. 2005) ("As the record in this case contains contradictory evidence, the fact that Plaintiff completed the twelfth grade alone cannot be relied upon to conclude that Plaintiff is not illiterate."). Here, the ALJ acknowledged that there exists "other evidence" to contradict that Plaintiff had an eighth grade—or even a fourth grade—educational ability: Plaintiff's Disability Report, Exhibit 2E, reflects that Plaintiff cannot read in English and cannot write more than his name in English. R. 23; *see also* Exhibit 2E/1, R. 228. In addition, Plaintiff expressly testified at the hearing that he can only sign his name in Spanish and "can read a little bit, letter by letter. I don't really know how to read [in Spanish]" and, when asked whether he can read and write in English, he responded, "No, I don't, I don't know how to read in English." R. 51; *see also* R. 54 (reflecting Plaintiff's hearing testimony that "I don't write" and the interpreter's explanation that Plaintiff further "said I don't write but when I sign, I use my right hand"). *See Green v. Barnhart*, 29 F. App'x 73, 75 (3d Cir. 2002) (finding that "there is evidence to contradict a presumption that" the claimant's completion of sixth grade meant that he had a marginal education where the claimant "testified that he could not read, and the Commissioner failed to explain his decision in light of that testimony"); *McMeekin v. Berryhill*, No. CV 16-1831, 2018 WL 783691, at *4 (W.D. Pa. Feb. 8, 2018) (remanding action where the claimant's testimony

"was consistent with someone who is 'functionally literate[,]' including, *inter alia*, "when asked whether he could read the headlines of a newspaper, he responded that he could read 'some stuff' but added that it is very hard for him to read. . . . He further explained that he cannot take a phone message unless someone spells out words for him" and finding that "[t]he ALJ's failure to acknowledge or discuss these facts is troublesome and requires further analysis and explanation"). The ALJ did not expressly consider this hearing testimony, which contradicts Plaintiff's numerical grade level, whether that level is the fourth grade or the eighth grade. R. 23–24. Accordingly, in light of the existence of this contradictory evidence, Plaintiff's formal education was not an accurate measure of his actual educational abilities and the ALJ erred in relying on his finding that Plaintiff had completed the eighth grade. Indeed, such reliance would be improper even had the ALJ found that Plaintiff had completed the fourth grade. *See id*. While admitting that there was "some ambiguity in the record" regarding Plaintiff's literacy, the ALJ simply relied on "the assumption that he [Plaintiff] can read", and that Plaintiff could sign his name on forms, and presumed that Plaintiff had completed the eighth grade because he found "no explanation" for Plaintiff's testimony to the contrary. R. 23–24. Based on this record, the Court is not persuaded that substantial evidence supports the ALJ's finding that Plaintiff had a "limited education" and was not illiterate. *See* 20 C.F.R. § 404.1564(b); SSR 20-01p, 2020 WL 1083309; *Green*, 29 F. App'x at 75; *McMeekin*, 2018 WL 783691, at *4.

Nor can the Court conclude that the ALJ's error in this regard is harmless. As previously discussed, Grid Rule 202.09 would have directed a finding of disability if Plaintiff, who was closely approaching advanced age on the date on which he was last insured for benefits and who had the RFC for light work and an unskilled work history, had been found to be illiterate. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09; *see also Jeffrey v. Berryhill*, No.

17CV01444WQHRBB, 2018 WL 3656154, at *3 (S.D. Cal. Aug. 2, 2018), *report and recommendation adopted*, No. 17CV1444-WQH-RBB, 2018 WL 4221588 (S.D. Cal. Sept. 5, 2018) ("If, as [the claimant] contends, Rule 202.09, contained in the Medical-Vocational Guidelines, directs a finding of disabled based on her limitation to light work due to her exertional limitations, then contrary to the Commissioner's contention, the ALJ could not satisfy his step-five burden by relying on the [vocational expert's] testimony.") (citations omitted); *Barrera v. Astrue*, No. ED CV 12-764-E, 2012 WL 5381645, at *3 (C.D. Cal. Nov. 1, 2012) ("A conclusion of disability, when directed by the Grids, is irrebuttable. . . . Thus, if the Administration concludes after fuller development of the record that Plaintiff is illiterate, the Administration must find Plaintiff disabled under Grid Rule 202.09, regardless of any vocational evidence that Plaintiff could perform work.") (internal citations omitted).

As noted, the Commissioner contends that the record supports the ALJ's finding that Plaintiff was not illiterate. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, p. 15. However, this Court has already explained why the ALJ's reasoning to support this finding is deficient under the applicable authority. To the extent that the Commissioner points to evidence not specifically relied upon by the ALJ to support his finding of literacy, *i.e.*, that the field office employee who handled Plaintiff's application did not observe any limitation in, *inter alia*, Plaintiff's ability to write, the Commissioner's *post hoc* rationalization in this regard must be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)). Finally, the Commissioner urges this

Court to reject "Plaintiff's one-time statement that he did not complete the fifth grade" and find instead that "Plaintiff's initial report of completing the eighth grade, notations of being able to communicate freely, and no other evidence of illiteracy" weigh in favor of the ALJ's finding that Plaintiff had a "limited education[,]" and thus rendering Grid Rule 202.09 inapplicable. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 15–16. However, not only did the ALJ fail to resolve this particular conflict in the evidence, but the ALJ also wholly failed to consider other such evidence in the record, including Plaintiff's hearing testimony that he could not read or write in any language. *See* 20 C.F.R. § 404.1564(b).

At bottom, for all these reasons, the Court concludes that substantial evidence does not support the ALJ's finding that Plaintiff had a "limited education." As the ALJ properly noted, "there is some ambiguity in the record" as to whether Plaintiff was illiterate. This Court therefore concludes that it is appropriate to remand this matter for further development of the record and for reconsideration of the finding that Plaintiff had a "limited education"—specifically for a finding as to whether or not Plaintiff was in fact literate.[5] Moreover, remand is appropriate even if, upon further development of the record and examination of this issue, the ALJ again concludes that Plaintiff is not illiterate and is therefore not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay

---

[5] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further development of the record and consideration of Plaintiff's literacy, the Court does not consider those claims.

speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").[6]

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  May 6, 2024                                   *s/Norah McCann King*
                                                 NORAH McCANN KING
                                                 UNITED STATES MAGISTRATE JUDGE

---

[6] It goes without saying that, in remanding this action, the Court takes no position on any particular educational classification, including whether or not Plaintiff is, in fact, illiterate.